Filed 4/13/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MELANIE CARNE, as Trustee, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NANCY A. WORTHINGTON et al.,<br><br>    Defendants and Respondents. | D067756<br><br><br><br>(Super. Ct. No. 37-2013-00061011-PR-TR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Jeffrey S. Bostwick, Judge. Reversed and remanded for further proceedings.

HainesLaw, Laurence F. Haines and Will M. Smith for Plaintiff and Appellant.

Law Offices of Harvey M. Payne III and Harvey M. Payne III for Defendant and Respondent Dillon Hasting.

DiPaolo Law and Thomas F. DiPaolo for Defendant and Respondent Nancy A. Worthington.

I.

INTRODUCTION

This case involves a dispute over the ownership of property formerly owned by decedent Kenneth Liebler. Liebler's daughter, appellant Melanie Carne, as putative successor trustee to the Kenneth Liebler Irrevocable Trust dated December 21, 2009 (the "2009 Trust"), filed a second amended petition (the "petition") to confirm the validity of the 2009 Trust, Carne's status as successor trustee of the 2009 Trust, and the assets of the 2009 Trust. In her petition, Carne sought to confirm that certain real property previously owned by Liebler, located on Via Regla (the "Via Regla Property"), had been properly transferred to the 2009 Trust. The 2009 Trust states, "I transfer to my Trustee the property listed in Schedule A, attached to this agreement," and lists the Via Regla Property in Schedule A. The 2009 Trust is signed by Liebler as grantor and by defendant and respondent, Nancy Worthington, and Craig Castle as cotrustees.[1]

Liebler's grandson, defendant and respondent Dillon Hasting, filed an opposition to the petition. Hasting was a beneficiary of the Liebler Revocable Declaration of Trust dated February 27, 1985 (the "1985 Trust"). In his opposition, Hasting contended that the 2009 Trust was not a valid trust because Liebler had not properly transferred title to the only asset allegedly in the 2009 Trust, the Via Regla Property. Specifically, Hasting argued that Liebler had not effectively transferred the Via Regla Property into the 2009 Trust because Liebler had failed to execute a deed transferring the property to the trust.

---

[1] Worthington was Liebler's former live-in companion. Castle is not a party to this action.

2

Hasting also argued that Liebler had not properly transferred the Via Regla Property to the 2009 Trust because Liebler was not the legal owner of the property at the time of the purported transfer to the 2009 Trust. In support of this contention, Hasting noted that Liebler held legal title to the Via Regla Property as trustee of the 1985 Trust, and the 2009 Trust contained no language indicating that Liebler was acting as the trustee of the 1985 Trust at the time of the purported transfer to the 2009 Trust. The trial court entered an order denying Carne's petition for the two reasons set out in Hasting's opposition.

On appeal, Carne contends that the trial court erred in denying her petition. We conclude that the language in the 2009 Trust quoted above is sufficient to convey the Via Regla Property to the 2009 Trust and that Liebler was not required to execute a separate deed in order to effectuate such conveyance. We further conclude that, because at the time the 2009 Trust was created, the 1985 Trust was a revocable inter vivos trust, and Liebler was the sole trustee who owned no interest in the Via Regla Property as an individual, Liebler's signature on the 2009 Trust was sufficient to "to convey good title" to the Via Regla Property from the 1985 Trust to the 2009 Trust. (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1350 (*Galdjie*).) Accordingly, we reverse the order and remand for further proceedings.[2]

---

[2] In its order denying the petition on the grounds stated in the text, the trial court stated that its ruling "moots the issue of the validity of the 2009 [T]rust based on undue influence and lack of capacity," which had been raised by way of separate pleadings that are not contained in the record in this appeal. The trial court may consider these issues on remand.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The 1985 Trust*

Liebler executed the 1985 Trust on February 27, 1985.  The 1985 Trust provides that Liebler is the trustor and the trustee and states that, during his lifetime, the trust is revocable in whole or in part.  The 1985 Trust appoints Donald Ballman and Dee Ballman (or their survivor) as successor trustees.  In May 1985, John W.F. Neim and Christine C. Neim transferred the Via Regla Property to the 1985 Trust by way of recorded deed.

Liebler amended the 1985 Trust in 1992.  Among other changes, the 1992 amendment revised provisions of the 1985 Trust related to the distribution of the trust estate upon Liebler's death by removing Carne as a beneficiary and listing several of Liebler's grandchildren, including Hasting, as beneficiaries.  In addition, the 1992 amendment provided that, upon the death of Liebler, the "Trustor's last legal residence, which is part of the trust estate,[3] shall be reserved for the use of [Worthington]," under certain circumstances.

In 2003, Liebler amended the 1985 Trust for a second and final time.  Among other changes, this amendment removed one of Liebler's grandchildren, Mark Curtis Hasting, as a beneficiary.

---

3    The Via Regla Property appears to satisfy this definition.

B.    *The 2009 Trust*

In 2009, Liebler executed the 2009 Trust.  As noted in part I., *ante*, among other provisions, the 2009 Trust expressly transfers the property listed in Schedule A to the trust, and lists the Via Regla Property in Schedule A.  The 2009 Trust also provides that, upon Liebler's death, "My Trustee shall distribute the remaining trust property to my descendants, *per stirpes* outright, free of trust."[4]  The 2009 Trust is signed by Liebler as grantor and Worthington and Castle as cotrustees.  In addition, the 2009 Trust provides that if Worthington and Castle cease to serve as trustees, "I name Melanie Carne to serve as successor Trustee."

C.    *Liebler's death and the naming of successor trustees to the 1985 Trust and the 2009 Trust*

Liebler died on October 3, 2012.[5]

Shortly after Liebler's death, Dee Ballman executed a document accepting the position of successor trustee to the 1985 Trust.  Dee Ballman then executed a document resigning as successor trustee to the 1985 Trust and appointing Worthington as successor trustee to the 1985 Trust.[6]

---

[4]    It appears to be undisputed that Carne would be entitled to a distribution under this provision.

[5]    Although this fact, and the facts related to the naming of the successor trustee with respect to the 2009 Trust discussed in this section, are not supported by any evidence in the record, they appear to be undisputed.  It appears that such facts were supported by exhibits attached to Carne's pleadings in the trial court.  However, those exhibits are not contained in the record on appeal.

[6]    In her resignation document, Dee Ballman stated that the other successor trustee named in the 1985 Trust, Don Ballman, had died.

With respect to the 2009 Trust, shortly after Liebler's death, Castle executed a document refusing to serve as trustee to the 2009 Trust. Worthington resigned as trustee to the 2009 Trust in April 2013. Shortly thereafter, Carne executed a document indicating her acceptance of the position of successor trustee to the 2009 Trust.

D.    *The second amended petition*

In September 2014, Carne filed a second amended petition to confirm the validity of the 2009 Trust, Carne's status as successor trustee of the 2009 Trust, and the assets of the 2009 Trust. In the petition, Carne described the 1985 Trust and the 2009 Trust as summarized above.

Carne contended that Liebler had intended to transfer legal ownership and title to the Via Regla Property to the trustee of the 2009 Trust and that he had "only failed to execute a deed of transfer through ignorance, oversight or negligence." Carne supported this contention by stating that, shortly after executing the 2009 Trust, Liebler moved to an assisted living facility where he remained until his death. In addition, Carne contended that deposition testimony from both Worthington and the attorney Liebler hired to prepare the 2009 Trust, Richard Stewart, supported a finding that Liebler intended to transfer the Via Regla Property into the 2009 Trust in order to avoid MediCal liens being placed on the property after his death.

Carne filed a brief in support of her petition in which she argued that Liebler "during [his] life, as trustee of the 1985 Trust created the 2009 Trust[,] included the [Via Regla Property] as the sole asset on Schedule A and therefore transferred possession of the [Via Regla Property] to the 2009 Trust . . . ."

6

E.      *The objections*

Hasting filed an objection to the petition.  In his objection, Hasting contended that the 2009 Trust was not a valid trust because there "was never a transfer of property during the owner's lifetime to another person as trustee."  In support of this contention, Hasting argued:

> "No deed whatsoever was signed by [Liebler] which would have irrevocably transferred the [Via Regla Property] to the third party trustees of his 2009 Trust.  Without the deed, there is no trust created over the real property in question and the trust fails in its entirety because there is no other res in the [2009 Trust]."

Hasting also argued that Liebler had not effectively transferred the Via Regla Property to the 2009 Trust because Liebler "did not own the [Via Regla Property] at the time the 2009 [T]rust was formed."  Hasting contended that "the owner of the [Via Regla Property] is the trustee of the 1985 [T]rust," and argued that Liebler "had no ability, as an individual, to transfer trust property he did not own from himself to third party trustees, as the language of the 2009 [T]rust purports to do."

Hasting also maintained that Liebler had not intended for Carne to inherit the Via Regla Property, and supported this contention with various factual allegations pertaining to the circumstances surrounding the execution of the 2009 Trust.[7]  Hasting supported his objection with his own declaration as well as Stewart's deposition testimony and documents from Stewart's file related to the 2009 Trust, among other documents.

---

[7]     Hasting noted that "[a] separate Petition was recently filed on the issues of undue influence and capacity out of an abundance of caution.  The undue influence / capacity Petition would become moot should this court deny the instant Petition . . . ."

7

Worthington also filed an objection to the petition and joined in Hasting's objection.8  Along with her objection, Worthington filed a declaration in which she described Liebler's relationship with Carne in a manner that suggested that Liebler had not intended for Carne to gain ownership of the Via Regla Property.

F.     *The trial court's ruling*

After further briefing and a hearing, the trial court entered an order on January 29, 2015 denying Carne's petition on two grounds.  First, the court ruled that Liebler had not properly transferred any property into the 2009 Trust.  The court reasoned in part:

> "In the present case, the [Via Regla Property] was not transferred to the [2009 Trust] by a deed, will, or inter vivos transfer.  Instead, Liebler only created the 2009 [T]rust and attempted to transfer the property into the 2009 [T]rust by a unilateral declaration, which was ineffective because Liebler was not the trustee."

Second, the court ruled that Liebler could not have transferred the Via Regla Property to the 2009 Trust because at the time of the execution of the 2009 Trust, Liebler did not own the Via Regla Property as an individual, and there was no evidence that he had transferred the Via Regla Property in his capacity as trustee of the 1985 Trust.  The court reasoned in part:

> "[Carne] argues Liebler transferred the [Via Regla Property] to the [2009 Trust] by creating the trust, listing the [Via Regla Property] as a trust asset and stating the property was transferred to the [2009 Trust].  [Citation.]  Even if these actions constituted an inter vivos transfer of the property, Liebler cannot transfer property he does not own.  [Citation.]  Liebler did not personally own the [Via Regla Property].  Rather, he owned the property as the trustee of the 1985 [T]rust.  There is no evidence Liebler created the 2009 [T]rust as the

---

8     Worthington's separate objection pertained to matters not relevant to this appeal.

8

trustee of the 1985 [T]rust or was acting as the trustee of the 1985 [T]rust when he attempted to transfer the property to the 2009 [Trust]."[9]

G.    *Carne's appeal*

Carne timely appeals the trial court's January 29 order denying her petition.  The order is appealable.  (See Prob. Code, § 1300, subdivision (k).)[10]

III.

DISCUSSION

A.    *The trial court erred in concluding that Liebler was required to execute a separate deed in order to transfer the Via Regla Property to the 2009 Trust*

Carne claims that the trial court erred in concluding that Liebler was required to execute a separate deed in order to transfer the Via Regla Property to the 2009 Trust. Carne's claim raises a question of law, which we review de novo.  (See *Ukkestad v. RBS Asset Finance, Inc.* (2015) 235 Cal.App.4th 156, 161 [applying de novo standard of review in determining whether certain real property had been properly transferred to a trust under undisputed facts].)[11]

---

9    The court also stated that it had "considered Attorney Stewart's deposition testimony," but that "Stewart's testimony does not reveal Liebler's understanding of how to effectively transfer the property to the [2009 Trust]."

10    On appeal, Hasting filed a respondent's brief and Worthington joined in that brief.

11    In their briefs, Carne and Hasting refer to arguably conflicting extrinsic evidence concerning Liebler's purported intent with respect to the 2009 Trust.  While Carne refers to such evidence in her statement of facts in her opening brief, the argument portion of her opening brief is confined to the undisputed evidence addressed in the text.  In addition, both parties agree that the de novo standard of review applies to Carne's claim. Under these circumstances, we need not, and do not, discuss any conflicting extrinsic evidence in this opinion.

1. *Governing law*

    a. *Applicable statutory provisions*

        i. *Probate Code provisions*

Probate Code section 15200[12] defines the methods by which a trust may be created and provides in relevant part:

> "Subject to other provisions of this chapter, a trust may be created by any of the following methods:
>
> "[¶] . . . [¶]
>
> "(b) A transfer of property by the owner during the owner's lifetime to another person as trustee."

Where a trust contains real property, section 15206, the applicable statute of frauds, requires a writing demonstrating that the real property is held in trust. Section 15206 provides in relevant part, "[a] trust in relation to real property is not valid unless evidenced by one of the following methods: [¶] . . . [¶] (b) By a written instrument conveying the trust property signed by the settlor . . . ."

        ii. *Evidence Code section 662*

According to the " 'form of title' presumption, the description in a deed as to how title is held is presumed to reflect the actual ownership interests in the property." *In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176, 184-185. Evidence Code section 662 codifies this presumption and provides, "The owner of the legal title to

---

[12] Unless otherwise specified, all subsequent statutory references are to the Probate Code.

property is presumed to be the owner of the full beneficial title.  This presumption may be rebutted only by clear and convincing proof."

        b.     *The Restatement Third of Trusts*[13]

"California trust law is essentially derived from the Restatement Second of Trusts.  Over a number of years, the Restatement Second of Trusts has been superseded by the Restatement Third of Trusts.  [Citation.]  As a result, we may look to the Restatement Third of Trusts for guidance."  (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 379.)

Comment b to section 16 of the Restatement Third of Trusts is entitled, "*Intended inter vivos transfer to another as trustee: effective or ineffective?*"  The comment discusses the circumstances under which property is effectively transferred from a trustor to a third party trustee by way of the trust agreement itself, without the execution of a separate deed:

> "Good practice certainly calls for the use of additional formalities and the taking of appropriate further steps, such as changes of registration, or the execution and recordation of deeds to land.  *Nevertheless, a writing signed by the settlor, or a trust agreement signed by the settlor and trustee, manifesting the settlor's present intention thereby to transfer specified property (such as all property listed on an attached schedule) is sufficient to create a trust.*  See Illustration 5."  (*Ibid.*)

---

[13]    Because neither party cited the provisions of the Restatement Third of Trusts discussed in this section, we permitted the parties to submit supplemental letter briefs concerning what effect, if any, such provisions should have on this court's consideration of whether the trial court properly concluded that there was not an effective transfer of real property to the 2009 Trust.

11

Illustration 5 of Section 16 of the Restatement Third of Trusts provides an example of such a transfer.

> "5. The owner of certain property executes and signs a writing stating that he thereby transfers that property to T in trust for B for life, with remainder thereafter to B's issue, and delivers the writing to T. In the absence of applicable statutory provisions requiring additional formalities, a trust is created."[14]

2.    *Application*

It is undisputed that record title to the Via Regla Property is held by the trustee to the 1985 Trust. Thus, we must consider whether Carne satisfied her burden to demonstrate by clear and convincing evidence that Carne is the actual owner of the Via Regla Property as trustee to the 2009 Trust.[15] (See Evid. Code, § 662; *In re Marriage of Brooks & Robinson*, *supra*, 169 Cal.App.4th at pp. 184-185 ["description in a deed as to how title is held is presumed to reflect the actual ownership interests in the property"].)

The 2009 Trust is signed by Liebler as grantor and Worthington and Castle as trustees. The 2009 Trust states, "I transfer to my Trustee the property listed in Schedule A, attached to this agreement." Schedule A lists the Via Regla Property by its legal

---

14    Consistent with the Restatement Third of Trusts, a California practice guide states, "As long as the trust document contains a list of trust property and *language satisfying the requirement for a . . . conveyance*, the property listed becomes trust property as soon as the document is executed." (1 Drafting Cal. Irrevocable Trusts (Cont.Ed.Bar 3d ed. 2015) § 10.140, p. 10-108, italics added.)

15    Carne acknowledges this burden in her reply brief in stating, "[Carne] has satisfied the requisite burden of proof through clear and convincing evidence in compliance with Evidence Code section . . . 662."

address.[16] Thus, the 2009 Trust is "a trust agreement signed by the settlor and trustee, manifesting the settlor's present intention thereby to transfer specified property," and as such is sufficient to transfer the Via Regla Property to the 2009 Trust. (Rest.3d Trusts, § 16, com. b.) Respondents do not cite, and our own research has not uncovered, any statutory provisions requiring additional formalities in order to convey real property in California.[17]

While Hasting asserts that "because Liebler did not sign a deed over to the third party trustees, there was no trust created in the Via Regla [P]roperty," he fails to identify any element of a deed that is missing in the 2009 Trust, or any provision of California law requiring that a conveyance of real property occur only by way of a formal deed. (See Civ. Code, § 1091 ["An estate in real property . . . can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing"]; Miller & Starr, *supra*, § 8.3 ["There is no required form of deed that must be used to effectuate a conveyance"].) We

---

[16] Hasting acknowledges in his brief that he does not dispute that the 2009 Trust contains a sufficient description of the Via Regla Property.

[17] A leading California real estate treatise summarizes the essential requirements to convey real property under California law as follows: "**Essential elements of a valid deed.** To be effective, an instrument conveying real property must be written and must name a grantor and a grantee. It must be subscribed by the grantor or the grantor's agent, and it must be delivered to and accepted by, the grantee. These are the minimum requirements for a valid deed, and if they are all present, the deed is effective to transfer title to the grantee, but if one of the essential elements is missing, the deed is ineffective to transfer title." (3 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 8.3 (Miller & Starr) (footnotes omitted).) It appears to be undisputed that the 2009 Trust is written, names a grantor and a grantee, is signed by the grantor, and was accepted by the grantees by virtue of their signatures.

13

therefore conclude that the creation of the 2009 Trust *itself* constituted a valid

conveyance of the Via Regla Property to the 2009 Trust.[18]

*Estate of Heggstad* (1993) 16 Cal.App.4th 943 (*Heggstad*), which Carne and

Hasting discuss at length in their briefing, is legally inapposite. *Heggstad* noted that "two

methods for creating a trust are codified in [Probate Code] section 15200: '(a) A

declaration by the owner of property that the owner holds the property as trustee,' and

'(b) A transfer of property by the owner during the owner's lifetime to another person as

trustee.' " (*Id.* at p. 948.) Relying on subdivision (a) of section 15200, and related

provisions of the Restatement Second of Trusts and a treatise, the *Heggstad* court

concluded "that a written declaration of trust by the owner of real property, in which he

names himself trustee, is sufficient to create a trust in that property, and that the law does

not require a separate deed transferring the property to the trust." (*Heggstad*, *supra*, at p.

950.)[19] The *Heggstad* court rejected the respondent's argument that "in order to uphold

---

[18]    In his supplemental brief, Hasting asserts that California, along with the "vast
majority" of other jurisdictions, requires "that an actual transfer of the property must
occur when there are third party trustees." (Citing *Reagh v. Kelly* (1970) 10 Cal.App.3d
1082, 1094, among other cases.) We agree. However, for the reasons stated in the text,
we conclude that the transfer occurred in the 2009 Trust itself.

[19]    The *Heggstad* court also noted that "[w]here the trust property is real estate, the
statute of frauds requires that the declaration of trust must be in writing signed by the
trustee." (*Heggstad*, *supra*, 16 Cal.App.4th at p. 948, citing § 15206.) Section 15206
provides three different ways that the statute of frauds may be satisfied with respect to a
trust involving real property:

> "A trust in relation to real property is not valid unless evidenced by
> one of the following methods:
> "(a) By a written instrument signed by the trustee, or by the trustee's
> agent if authorized in writing to do so.

14

the trust, we must view the trust document as a valid conveyance of the property to the trust." (*Ibid.*) The *Heggstad* court reasoned, "This argument misses the point that a declaration of trust is sufficient to create a trust, without the need of a conveyance of title to the settlor as trustee." (*Id.* at pp. 950-951.)

In this case, section 15200, *subdivision (a)*, upon which *Heggstad* is based, has no applicability. Liebler did not execute a *declaration* stating that he held the Via Regla Property as trustee in the 2009 Trust. Thus, we reject Carne's argument that the facts of "the *Heggstad* ruling are directly applicable." However, because, for the reasons discussed above, we do "view the trust document as a valid *conveyance* of the property to the [2009 Trust]" (*Heggstad*, *supra*, 16 Cal.App.4th at p. 950, italics added), we conclude that there was a transfer of property that complied with section 15200, *subdivision (b).*[20] Thus, *Heggstad* is analogous only in that, as in this case, no separate deed was required in order for real property to become subject to a trust.[21]

---

"(b) By a written instrument conveying the trust property signed by the settlor, or by the settlor's agent if authorized in writing to do so.
"(c) By operation of law."

[20] In part III.B., *post*, we conclude that Liebler's signature on the 2009 Trust was sufficient "to convey good title" to the Via Regla Property from the 1985 Trust to the 2009 Trust. (*Galdjie*, *supra*, 113 Cal.App.4th at p. 1350.)

[21] *Estate of Powell* (2000) 83 Cal.App.4th 1434 (*Powell*), which both parties cite in their supplemental briefs, is analogous (and distinguishable) for the same reason. In *Powell*, the court concluded that no separate deed was required in order for the real property at issue in that case to become subject to a trust; the property became subject to the trust via *declaration* (§ 15200, subd. (a)) as in *Heggstad*, rather than via *transfer* (§ 15200, subd. (b)), as in this case. (*Powell*, *supra*, at p. 1443.)

We are not persuaded by Hasting's arguments in support of his claim that the language in the 2009 Trust failed to effectuate a conveyance. [22] Hasting argues that recognizing the legality of the transfer in this case where "no deed conveying the property exists, would sanction creditor fraud." (Formatting omitted.) In that regard, Hasting argues:

> "To allow the *Heggstad* rule to be extended to an irrevocable trust with third parties as trustees would turn the concept of trust law on its head and otherwise create a method to defraud creditors. A main reason for establishing an irrevocable trust with separate third party trustees is creditor protection for the settlor. In order to gain creditor protection, one must irrevocably relinquish ownership of the asset by delivering ownership of the asset to the third party trustees. If all that is needed is an irrevocable trust with a declaration of intent to transfer without actual delivery, then a settlor can create an irrevocable trust document and pull the wool over creditors['] eyes by producing the irrevocable trust only as necessary, yet secretly maintain the ability to dispose of the property, encumber the property, or do whatever the settlor wants with the property while keeping creditors at bay, if there is no actual irrevocable transfer to a third party trustee."

To begin with, we are not extending the "*Heggstad* rule," and this case does not involve "a *declaration of intent* to transfer." (Italics added.) As discussed above, while *Heggstad* involved a "declaration of trust" (*Heggstad*, *supra*, 16 Cal.App.4th at p. 950) under section 15200, subdivision (a), this case involves a transfer of property under section 15200, subdivision (b). More fundamentally, we emphasize that this opinion says

---

22    In particular, we are not persuaded by Hasting's reference to a declaration that he offered in the trial court by Attorney Michael Ditter. In that declaration, Attorney Ditter relates his experience as an attorney practicing trust law and states his opinion that the "[2009 Trust] fails and is not valid." Ditter's declaration plainly states a legal conclusion and does not establish the illegality of the 2009 Trust.

16

nothing about the validity of Liebler's transfer of the property to the 2009 Trust *vis. a vis. third parties*. Thus, nothing in this opinion will "sanction creditor fraud," since we do not conclude that the transfer in this case was effective as to Liebler's creditors. We conclude only that Liebler was not required to execute a separate deed in order for there to be a valid transfer between Liebler (as transferor) and the trustees of the 2009 Trust (as transferees).[23] As the Restatement Third of Trusts, section 16 notes, "formalities prescribed for the creation of a recordable document, or otherwise for protection of or from third parties, need not be satisfied in order to make a valid donative transfer, that is, one that is effective as between the transferor and the transferee(s)." (Cf. *Heggstad*, *supra*, at p. 950 and fn.7 [stating that written declaration is sufficient to create a trust in property but warning, "We hasten to note, however, that to be effective as to strangers, the declaration of trust must be recorded"].)

Neither of the two cases from other jurisdictions on which Hasting relies in his brief is contrary to the reasoning of this opinion. In *Dahlgren v. First Nat. Bank* (1978) 94 Nev. 387, the only issue before the Nevada Supreme Court was whether a certain handwritten note constituted a holographic will such that the decedent's property could pass pursuant to the provisions in the note. (See *id.* at p. 389 ["The sole issue confronting us is whether the trial court erred in finding the hand-written instrument to be a holographic will"].) In the course of its opinion, the *Dahlgren* court did note that, during her lifetime, the decedent had entered into a trust agreement with a bank that provided

---

[23] In part III.B., *post*, we explain that Liebler successfully transferred the Via Regla Property, *as trustee of the 1985 Trust*, to the trustees of the 2009 Trust.

17

"that upon the death of trustor, her condominium together with a cash sum was to be distributed to Mamie Gilson." (*Id.* at p. 388.) The *Dahlgren* court also stated, "[T]he record is clear, and the [trial] court so found, that at no time was the condominium ever deeded to respondent, and it therefore did not become a part of the trust estate." (*Id.* at p. 390.) However, unlike in this case, there is nothing in *Dahlgren* that suggests that the trust agreement at issue in that case contained a provision expressly transferring the real property from the trustor to the trustees. [24] Thus, the Nevada court's dicta in *Dahlgren* is not contrary to the reasoning in this opinion.

Hasting's reliance on *Tyson v. Henry* (1999) 133 N.C.App. 415 (*Tyson*) is unpersuasive for the same reason. In *Tyson*, the trust agreement recited that five dollars had been provided to the trustee and "further provided that other properties described therein may later be delivered to the trust." (*Id.* at p. 416.) The *Tyson* court concluded that a trust had not been created, for the following reasons:

> "[T]he instant instrument can not qualify as an inter vivos trust because the decedent never transferred his property interest to the designated trustee, Taylor. [Citation.] In his unverified answer, Taylor admitted that he never received any cash or property from Tyson. Therefore, Tyson never disposed of his property to the trustee, Taylor. As a result, Taylor was never given full legal title or equitable ownership of Tyson's real property. Based on the

---

24    *Trott v. Jones* (2004) 85 Ark.App. 526 (*Trott*), cited in Hasting's supplemental brief, is also distinguishable for this same reason. In *Trott*, the court rejected the appellant's contention "that a trust was established which contained the decedent's house and bank account even though there was no transfer of legal title of these properties to the trustees." (*Id.* at p. 530.) However, there is nothing in *Trott* that suggests that the trust agreement at issue in that case contained a provision expressly transferring the trust res from the trustor to the trustees, as is true in this case.

18

aforementioned evidence, we are compelled to hold that an inter vivos trust was not created."  (*Id.* at pp. 417-418.)

Unlike in *Tyson* in which the trust agreement provided that other properties "may later be delivered to the trust" (*Tyson*, *supra*, 133 N.C.App. at p. 416), in this case, Liebler expressly transferred the Via Regla Property to the trustee in the 2009 Trust.

Finally, we acknowledge that in *Cate-Schweyen v. Cate* (2000) 303 Mont. 232, 241 (*Cate*),[25] the Supreme Court of Montana concluded that the trust document at issue in that case was "insufficient to serve as an instrument of conveyance" even though, according to the *Cate* court, the property was "clearly identified in the handwritten [trust] document . . . . "  (*Ibid.*)[26]  The court reasoned, "[W]e concluded under the similar circumstances described in [*McCormick v. Brevig* (1999) 294 Mont. 144 (*McCormick*)] that in order for a trust document to serve as an instrument of conveyance, the person executing the trust document must subsequently redeliver, confirm, ratify, or adopt the transfer."  (*Cate*, *supra*, at p. 241.)

In *McCormick*, an exhibit that contained a list of the trust assets "was not attached to the document at the time the trust was executed."  (*McCormick*, *supra*, 294 Mont. at p. 159.)  The *McCormick* court stated, "*Because there was no proper description of the property within the document itself, or attached as Exhibit A*, the trust failed to convey the property at its execution."  (*Ibid.*, italics added.)  The *McCormick* court further

---

25    Hasting cited *Cate* in his supplemental brief.
26    Elsewhere in its opinion, the *Cate* court noted that the trust document stated in relevant part, "I Jerome J. Cate . . . do hereby sell, assign and convey all of my oil gas and mineral interests . . . to my daughter, Shannon Cate, to hold in trust . . . ."  (*Cate*, *supra*, 303 Mont. at p. 238.)

concluded that even assuming that appellant could present evidence that the trustor had attached Exhibit A to the trust agreement "sometime *after* he executed the trust" (*id.* at p. 160, italics added), the "attachment of such an exhibit could have validated the trust document as an instrument of conveyance of the real property only if the person executing the trust document were to have redelivered, confirmed, ratified, or adopted the transfer." (*Id.* at pp. 159-160.)

In this case, unlike in *McCormick*, it is undisputed that the 2009 Trust contains "a proper description of the property" (*McCormick*, *supra*, 294 Mont. at p. 159), within an *attached* Schedule A and that Liebler expressly stated in the 2009 Trust, "I transfer to my Trustee the property listed in Schedule A, attached to this agreement." Thus, there is no reason to consider whether Liebler could have effectuated a conveyance and "validated the trust document" (*ibid.*), by attaching an exhibit to the trust *after* the trust's execution listing the Via Regla Property. However, to the extent *Cate* may be read to stand for the proposition that, *even where the conveyance is clearly stated in the trust document*, the trustor must "redeliver, confirm, ratify, or adopt the transfer" (*Cate*, *supra*, 303 Mont at p. 241), we decline to follow such reasoning. We are aware of no California authority that would support such a proposition, and we decline to adopt a requirement that would, in effect, mandate that a trustor convey real property *twice* where the conveyance is in a trust document in order for it to constitute a valid transfer.

Accordingly, we conclude that the trial court erred in determining that Liebler was required to execute a separate deed in order to transfer the Via Regla property to the 2009 Trust.

20

B.    *The trial court erred in concluding that Liebler failed to transfer the Via Regla Property to the 2009 Trust because he did not "personally own the property" and he did not transfer the property as trustee of the 1985 Trust*

Carne claims that the trial court erred in concluding that Liebler failed to transfer the Via Regla Property to the 2009 Trust because Liebler did not "personally own the property" and he did not transfer the Via Regla Property as trustee of the 1985 Trust.

Carne's claim raises a question concerning the proper interpretation of the 2009 Trust.  Since our resolution of this claim does not turn on a conflict in the extrinsic evidence, we apply the de novo standard of review.  (See *Burch v. George* (1994) 7 Cal.4th 246, 254 ["The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein"].)

1.    *Governing law*

In *Galdjie*, *supra*, 113 Cal.App.4th 1331,[27] the Darwishes appealed from a judgment that awarded Galdjie specific performance of a real estate agreement between Galdjie and the Barbara Kramer Darwish and David Darwish Revocable Living Trust. The *Galdjie* court considered "whether [Galdjie's] failure to name the Trust as defendant or to specify that [the Darwishes] were being sued in their capacity as trustees means that the judgment is against the wrong parties and cannot be enforced."  (*Id.* at p. 1337.)  In

---

[27]    Neither party cited *Galdjie* in their initial briefing on appeal.  We provided the parties with an opportunity to submit supplemental letter briefs addressing the effect, if any, of *Galdjie* with respect to whether the trial court correctly concluded that Liebler's signature of the 2009 Trust was insufficient to "convey good title" (*Galdjie*, *supra*, 113 Cal.App.4th at p. 1350), to the Via Regla Property.  We have considered the parties' supplemental briefing in deciding this issue.

considering this issue, the *Galdjie* court noted, "[I]t is clear that . . . one who wishes to ensure that trust property will be available to satisfy a judgment, whether for damages for breach of contract or for specific performance, should sue the trustee in his or her representative capacity." (*Id.* at p. 1349.)

However, despite Galdjie's failure to name the Darwishes in their capacity as trustees, the *Galdjie* court concluded that this omission did not require reversal of the judgment. The *Galdjie* court reasoned:

> "Courts have held that where a trustee signs a contract of sale or deed without reference to his or her representative capacity, the contract or deed is enforceable against the trust. [Citations.]
>
> "In a similar vein, a California court has held that a contract of sale signed by a beneficiary of a revocable inter vivos trust who held the power to direct the trustee to purchase or sell real estate was enforceable in an action for specific performance against the trust. [Citation.] The court pointed out that a revocable inter vivos trust is a probate avoidance device, but does not prevent creditors of the settlors—who are often also the trustees and the sole beneficiaries during their lifetimes—from reaching trust property. [Citations.]
>
> "The evidence before us establishes that the Trust is a revocable inter vivos trust, that appellants are the sole trustees and, that as beneficiaries, they have the power during their lifetimes to direct the sale of the real property owned by the trust. *In view of the above authorities, their signatures as individuals on the title deed as required by the judgment entered herein is sufficient to convey good title from the Trust.*" (*Galdjie*, *supra*, 113 Cal.App.4th at p. 1349, italics added.)

2.      *Application*

It is undisputed that, at the time of the execution of the 2009 Trust, the 1985 Trust was a revocable inter vivos trust, Liebler owned the Via Regla Property as the sole trustee of the 1985 Trust, and Liebler had the power during his lifetime to transfer the real

22

property owned by the 1985 Trust. Under these circumstances, Liebler's signature on the 2009 Trust was "sufficient to convey good title" from the 1985 Trust to the 2009 Trust. (*Galdjie*, *supra*, 113 Cal.App.4th at p. 1350.)

Accordingly, we conclude that the trial court erred in determining that Liebler failed to transfer the Via Regla Property to the 2009 Trust because he did not "personally own the property" and he did not transfer the property as trustee of the 1985 Trust.

IV.

DISPOSITION

The trial court's January 29, 2015 order is reversed and the matter is remanded for further proceedings consistent with this opinion. Respondents are to bear costs on appeal.


AARON, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.