Filed 3/19/21  Estate of Mallen CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| Estate of MARILYN ANN MALLEN, Deceased. | A156652 |
| DANIEL A. MALLEN, Petitioner and Respondent, v. KELLI MALLEN et al., as Cotrustees, etc., Objectors and Appellants. | (San Francisco City & County Super. Ct. No. PES-17-301322) |
| KELLI MALLEN et al., as Cotrustees, etc., Plaintiffs and Appellants, v. DANIEL A. MALLEN, Defendant and Respondent. | A156818 (San Francisco City & County Super. Ct. No. PTR-18-302018) |

## ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]

THE COURT:

It is ordered that the opinion filed herein on February 19, 2021, be modified as follows:

1.  On page 9, footnote 7, delete the text of the footnote and replace it with the following text, so that footnote 7 reads:

> [7] In a focus letter sent before oral argument, we asked the parties to address whether the express terms of the Trust constitute a valid transfer of the Moncada property to the trustees of the Trust under subdivision (b) of section 15200, citing *Heggstad, supra,* 16 Cal.App.4th 943, and *Carne, supra,* 264 Cal.App.4th 548. Although Daniel contended at oral argument and in his petition for rehearing that this was a "new issue," we disagree. In their petition for order determining title to real property, and in their briefing on appeal, appellants did not expressly rely on either subdivision (a) or (b) of section 15200, but pointed only generally to *Heggstad* and stated that the trust instrument "contained words of conveyance." Moreover, Daniel relied on both *Heggstad* and *Carne* below. Whether a trust was established over the Moncada property was an issue raised by appellants and litigated by the parties, "and the fact that a party does not address an issue, mode of analysis, or *authority* that is raised or fairly included within the issues raised does not implicate the protections of [Government Code] section 68081." (*People v. Alice* (2007) 41 Cal.4th 668, 679, italics added; Gov. Code, § 68081 [appellate court may not decide new issue without providing opportunity for supplemental briefing].)

2.  On page 12, first paragraph, delete the last two sentences of the paragraph, beginning with "Moreover, it is not clear," through and including footnote 8, and replace them with a new footnote 8, the text of which reads:

> [8] In his petition for rehearing, Daniel argues for the first time that articles 5 and 6 of the Trust would disinherit all nine children and replace them with a continuing trust called the "Mallen Children's Trust" as "the sole beneficiary." The continuing trust, in turn would provide a conditional term of years for the children to reside in the property, terminable by Patty's death, the passage of five years, or an offer to buy the

2

property for $4.5 million, and would effectively eliminate all nine children as direct heirs on Marilyn's death, thereby changing the beneficiaries in violation of section 4264, subdivision (f). We will not address these arguments developed for the first time in a petition for rehearing.

3.  On page 13, in the last sentence of the first paragraph, which begins "Here, unlike in *Schubert*," delete the words "there is no evidence" and replace them with "it is not clear," so the sentence reads:

> Here, unlike in *Schubert*, it is not clear that Marilyn's attorneys-in-fact *changed* the beneficiaries from those designated by the laws of intestate succession, nor is there any issue of overriding her testamentary intent because she died intestate.

4.  On page 13, second paragraph, delete the first sentence that begins "Determining the validity of the trust," and insert the following three sentences:

> Determining the validity of the Trust under the provisions of section 4264, subdivisions (a) and (f) may be further complicated in this case by the Trust's reference to the distribution of the Moncada property by a "Mallen Children Trust," which no party explains or discusses. Moreover, Kelli told the trial court that the Trust provision allowing all siblings to reside in the Moncada property has been waived, because the siblings have all agreed to sell the property. The trial court made no specific finding on this issue.

5.  On page 13, second paragraph, in the sentence beginning "Because the issue was not presented," replace the word "is" with "are," so the sentence reads:

> Because the issue was not presented in the trial court below and concerns factual issues that the record and briefing are inadequate to permit us to resolve, we decline to address it.

3

There is no change in the judgment.

Respondent's petition for rehearing is denied.

Dated:

_____
HUMES, P. J.

A156652
*Estate of Mallen*

Filed 2/19/21  Estate of Mallen CA1/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Estate of MARILYN ANN MALLEN, Deceased. | A156652 |
| DANIEL A. MALLEN, Petitioner and Respondent, v. KELLI MALLEN et al., as Cotrustees, etc., Objectors and Appellants. | (San Francisco City & County Super. Ct. No. PES-17-301322) |
| KELLI MALLEN et al., as Cotrustees, etc., Plaintiffs and Appellants, v. DANIEL A. MALLEN, Defendant and Respondent. | A156818 (San Francisco City & County Super. Ct. No. PTR-18-302018) |

Marilyn Ann Mallen died in September 2017, survived by her nine children.  When she died, title to one of her real properties was held in her own name rather than by the trustees of a revocable living trust established by her attorneys-in-fact under a durable power of attorney.  Shortly after her death, one of Marilyn's sons, Daniel, filed a petition for probate in San

Francisco Superior Court.[1]  In response, three of Marilyn's other children, Kelli, Mary, and Kevin (hereafter appellants), filed a petition for order determining title to property, seeking to have the real property recognized as an asset of the trust.  The trial court denied the latter petition, concluding the petitioners failed to establish a trust had been created over the real property.  The trial court appointed Daniel administrator of Marilyn's estate and denied a request by his siblings to appoint a neutral administrator.  Having reviewed the parties' briefs and the record, we now reverse the determination that a trust was not established over the property, but affirm the denial of appellants' request to appoint a neutral administrator.

## I.  BACKGROUND

Marilyn Ann Mallen died in September 2017, in San Francisco.  She died intestate.[2]  Marilyn was survived by her nine children: Patricia, Kelli, Carrie, Mary, William, Michael, Kevin, Daniel, and Thomas.

### A.  *Durable Power of Attorney*

In 2009, Marilyn executed a durable power of attorney, appointing three of her children, Mary, Kelli, and William, as attorneys-in-fact to act legally on her behalf in a fiduciary capacity.  Among other powers, the durable power of attorney authorized Marilyn's attorneys-in-fact to establish and modify trusts for her benefit and the benefit of her issue, and to transfer

---

[1] Because all individuals involved in this case share the same last name, we refer to each of them by their first name.  We intend no disrespect in doing so.

[2] Appellants dispute that Marilyn died intestate because they contend that she established a trust, but they do not dispute she died without a valid will, which is the definition of "intestate."  (Black's Law Dict. (11th ed. 2019); 14 Witkin, Summary of Cal. Law (11th ed. 2020) Wills and Probate, § 87.)

interests in real property to the trustee of a revocable trust created by her as settlor.

## B. *The Trust*

In 2016, Kelli, Mary, and William, as Marilyn's attorneys-in-fact, executed the Marilyn Ann Mallen Revocable Trust dated December 1, 2016 (Trust). Marilyn is identified as the settlor of the Trust and Kelli, Mary, and Kevin are identified as trustees. The Trust contains a statement of intent "to protect the assets of Marilyn (Midge) Mallen during her lifetime and after her death from persons other than her children" and "to create a fair and just means to distribute trust property solely to the children of Bill and Midge Mallen."

Under the express terms of the Trust, the "settlor hereby transfers and assigns to the trustees certain property (the 'trust estate'), in trust, to be held, administered, and distributed as provided in this instrument." The "Trust Estate" is described in "Article Two" of the Trust. Under the heading "Definition of Trust Estate," it provides: "All property subject to this instrument from time to time is referred to as the 'trust estate' and shall be held, administered, and distributed as provided in this instrument. The trustee shall hold, administer, and distribute the property described in the Schedule of Trust Assets (which is attached hereto and made a part of this trust instrument), any other property that may be hereafter subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument."

Attached to the trust instrument is a schedule of trust assets that identifies only one asset: "1. Real property located at 244 Moncada Way, San Francisco, CA 94127."

3

## C. *The Moncada Property*

During her lifetime, Marilyn owned the real property located at 244 Moncada Way in San Francisco (Moncada property). The property was titled in her name when she died.

## D. *Procedural History*

In October 2017, shortly after Marilyn's death, Daniel and his sister Carrie initiated a probate proceeding. Daniel filed a first amended petition in February 2018, which is the operative petition here.[3] Daniel sought letters of administration and requested the trial court appoint him administrator of Marilyn's estate.

In response to Daniel's petition for letters of administration, appellants filed a petition for order determining title to real property under Probate Code[4] section 850, subdivision (a)(3).[5] Appellants argued that the Trust had been established on Marilyn's behalf by her attorneys-in-fact pursuant to the durable power of attorney and section 4264, subdivision (a). Appellants argued that although Marilyn "died owning the real property located at 244 Moncada Way, San Francisco, CA" and title was in her name, the trust instrument (1) contained words of conveyance transferring the trust estate into the trust, (2) included the schedule of trust assets in the definition of the trust estate, and (3) listed the Moncada property in the schedule of trust

---

[3] Carrie is not named as a petitioner in the first amended petition.

[4] All further statutory references are to the Probate Code unless otherwise stated.

[5] In February 2018, appellants recorded a grant deed reflecting a transfer of the Moncada property by the trustees of the Trust into the Trust. No party disputes that the grant deed, which was executed and recorded after Marilyn's death, was ineffective to convey the Moncada property into the Trust.

assets attached to the Trust. Appellants asserted Marilyn intended "title to the [Moncada property] be held in the living trust," and argued the court had authority under section 850, subdivision (a)(3)(B) and *Estate of Heggstad* (1993) 16 Cal.App.4th 943 (*Heggstad*) to determine the Moncada property was a Trust asset.

At the end of their petition, appellants also included objections to Daniel's petition for letters of administration. Appellants argued, among other things, that Daniel had an actual conflict of interest with at least five of his siblings and should not be granted letters of administration because there was no real property that needed to be probated.

Shortly after filing their petition and objections in the probate matter, the trial court directed appellants to file their petition in a separate trust proceeding, which they did. Daniel filed an objection. In his briefing, Daniel argued that *Heggstad, supra*, 16 Cal.App.4th 943 was inapposite because *Heggstad* "requires that the owner of the property be the trustee of the transferee trust," but Marilyn "did not, herself, execute a declaration of trust stating that she owned the Moncada Property as Trustee." He also argued that the cotrustees of the Trust were unsuitable to serve as fiduciaries to administer the Moncada property because they "defrauded their siblings" by expanding their powers under the durable power of attorney beyond the limited scope they had represented to their siblings in an e-mail.[6] Daniel also

_____

[6] In addition to the Moncada property, Marilyn held an interest in property at 384 Baltimore Way, San Francisco (Baltimore Way property). Marilyn apparently deeded Mary the Baltimore Way property in 2006, in joint tenancy. In 2010, Mary recorded a grant deed transferring Marilyn's interest in the property to Mary. Daniel contends that Mary and Kelli, acting as Marilyn's agents under the durable power of attorney, improperly transferred the Baltimore Way property to Mary, and further contends that Mary secretly encumbered the property with a $435,000 loan and has not

5

argued that probate of the Moncada property was "the most equitable and appropriate means of administering it" to avoid "all out litigation" among the siblings about whether the Moncada property is an asset of the Trust.

Daniel also filed a reply to appellant's objections to the petition for letters of administration. Daniel argued appellants' objection to the probate petition was procedurally defective because it was inserted at the end of appellants' petition without being mentioned in the caption, and because probate was the only appropriate way to proceed in light of the fact that the Moncada property was not an asset of the Trust, the Baltimore Way property had to be probated, probate was necessary to investigate what happened to the loan proceeds from the Moncada and Baltimore Way properties, and because appellants were unsuitable to serve as fiduciaries.

The trial court held a hearing on December 24, 2018. The court asked questions of and heard responses from Kelli, Mary, and Patricia at the hearing, though none of the sisters were placed under oath.

At the end of the hearing, appellants' counsel asked the court to appoint a professional fiduciary as administrator of Marilyn's estate. The court questioned whether it could appoint a neutral administrator sua sponte, and told appellants' counsel it did not have a list of private fiduciaries. The court invited appellants to file additional briefing on whether the court could appoint a neutral fiduciary, then took both matters in the probate and trust proceedings under submission.

The trial court subsequently denied appellants' petition for order determining title to real property. The court's order states, in relevant part:

accounted for the funds. Because issues regarding the Baltimore Way property were not before the trial court in the proceedings below and are not involved in this appeal, however, we express no opinion on that issue.

6

"On August 15, 2009[,] [Marilyn] had executed a durable power of attorney for financial management naming as co-agents Kelli Mallen, Mary Mallen, and *William* Mallen (the 'Co-Agents'). [¶] . . . On December 1, 2016, the Co-Agents executed a declaration of trust in which they identified the [Moncada property] on Schedule A and declared three individuals as co-trustees, *Kevin* Mallen, Kelli Mallen and Mary Mallen (the 'Trust Declaration'), holding the assets identified on Schedule A in trust for [Marilyn] during her lifetime and thereafter for the benefit of her issue. Petitioners have not shown that a trust was created over the real property."

In the probate proceeding, the trial court denied appellants' request to appoint a neutral professional fiduciary and appointed Daniel administrator of Marilyn's estate.

Appellants timely filed notices of appeal in both the trust and probate matters. We consolidated the cases on appeal.

## II. DISCUSSION

### A. *The Moncada Property Was an Asset of the Trust*

Appellants contend the trial court erred in denying their petition for order determining title to real property, which they are terming their "*Heggstad* petition." Appellants assert that Marilyn's agents under the durable power of attorney had authority to create a trust, and the Trust contained words of conveyance making the Moncada property an asset of the Trust. We agree.

The parties' dispute regarding the status of the Moncada property centers on their differing interpretations of the seminal *Heggstad* opinion, and its proper application under the circumstances of this case. In *Heggstad,* the decedent had executed a revocable living trust, naming himself as trustee, and identifying the trust property in a document titled schedule A,

7

which was attached to the trust document.  (*Heggstad, supra*, 16 Cal.App.4th at p. 946.)  However, the decedent never executed a grant deed to reconvey his interest in the real property to himself as trustee of the revocable living trust.  The appellate court held that "a written declaration of trust by the owner of real property, in which he names himself trustee, is sufficient to create a trust in that property, and . . . the law does not require a separate deed transferring the property to the trust."  (*Id.* at p. 950.)

Daniel argues that *Heggstad* is inapposite here, because unlike in *Heggstad*, Marilyn did not convey the Moncada property in trust to herself as trustee, nor could she have done so because she was never trustee of the Trust.  Accordingly, he contends, "Appellants cannot establish the creation of a trust under [section 15200, subdivision (a)] because [Marilyn] was not a trustee, so there is no evidence whatsoever that [Marilyn] made the requisite declaration that *she* held the property as trustee."

The problem with Daniel's argument, however, is that, as the *Heggstad* court pointed out, section 15200 identifies several ways to establish a trust.  The statute provides, in relevant part:  "Subject to other provision of this chapter, a trust may be created by any of the following methods: [¶] (a) A declaration by the owner of property that the owner holds the property as trustee. [¶] (b) A transfer of property by the owner during the owner's lifetime to another person as trustee."  (§ 15200, subds. (a) & (b); see *Heggstad, supra*, 16 Cal.App.4th at p. 948 [observing that "[t]hese two methods for creating a trust are codified" in § 15200, subds. (a) & (b)].)  We agree with Daniel that section 15200, *subdivision (a)*, the provision at issue under the facts of *Heggstad*, has no applicability here because Marilyn did not make a declaration that she held the Moncada property as trustee of the Trust.  (See *Carne v. Worthington* (2016) 246 Cal.App.4th 548, 559 (*Carne*).)

8

But section 15200, subdivision (b) provides a trust is created when the owner transfers property during the owner's lifetime to another person as trustee.[7]

That is what happened here. Marilyn is identified as the settlor of the trust and Mary, Kelli, and Kevin are identified as trustees. Paragraph 1.1 of the trust instrument states: "The settlor hereby transfers and assigns to the trustees certain property (the 'trust estate'), in trust, to be held, administered, and distributed as provided in this instrument." Paragraph 2.1 of the trust instrument states: "All property subject to this instrument from time to time is referred to as the 'trust estate' and shall be held, administered, and distributed as provided in this instrument. The trustee shall hold, administer, and distribute the property described in the Schedule of Trust Assets (which is attached hereto and made a part of this trust instrument), and any other property that may be hereafter subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument." The schedule of trust assets attached to the trust instrument, in turn, lists one asset: the Moncada property. These provisions, read together, reflect that Marilyn, through her designated attorneys-in-fact, transferred the Moncada property to the trustees of the Trust during her lifetime.

---

[7] In a focus letter sent before oral argument, we asked the parties to address whether the express terms of the Trust constitute a valid transfer of the Moncada property to the trustees of the Trust under subdivision (b) of section 15200, citing *Heggstad*, *supra*, 16 Cal.App.4th 943, and *Carne*, *supra*, 246 Cal.App.4th 548. Although Daniel contended at oral argument this was a new issue, we disagree. In their petition for order determining title to real property, and in their briefing on appeal, appellants did not expressly rely on either subdivision (a) or (b) of section 15200, but pointed only generally to *Heggstad* and stated that the trust instrument "contains words of conveyance." Moreover, Daniel relied on both *Heggstad* and *Carne* below.

9

Although it would have perhaps been advisable to record a grant deed memorializing the transfer, we conclude the trust instrument itself was sufficient to transfer the Moncada property into the Trust. (See Civ. Code, § 1091 ["An estate in real property . . . can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing."]; § 15206 ["A trust in relation to real property is not valid unless evidenced by one of the following methods: [¶] (a) By a written instrument signed by the trustee, or by the trustee's agent if authorized in writing to do so. [¶] (b) By a written instrument conveying the trust property signed by the settlor, or by the settlor's agent if authorized in writing to do so. [¶] (c) By operation of law."].) The trust instrument was signed by Kelli, Mary, and William as attorneys-in-fact for Marilyn, and by Kelli, Mary, Kevin as trustees. Daniel does not assert that the language in the trust instrument failed to effectuate a conveyance under section 15200, *subdivision (b)*, nor does he contend that any additional formality was required to create a trust over the Moncada property. Thus, while *Heggstad*'s facts were different, it is analogous in that here, as in <u>*Heggstad*</u>, no separate deed was required in order for the Moncada property to become subject to the Trust. (*Carne*, *supra*, 246 Cal.App.4th at p. 559.) Because we conclude the record affirmatively establishes the Moncada property was an asset of the Trust, we find it unnecessary to address appellants' alternative arguments that the trial court should have granted their petition under theories of constructive and resulting trust.

Daniel also does not dispute that Marilyn's attorneys-in-fact had express authority under the terms of the power of attorney to create a trust on Marilyn's behalf under section 4264, subdivision (a). He does argue, however, that the Trust was invalid because Marilyn's attorneys-in-fact

10

violated section 4264, subdivision (f) when they attempted to change the beneficiary designation from that provided by the laws of intestate succession. Daniel relies on *Schubert v. Reynolds* (2002) 95 Cal.App.4th 100 (*Schubert*) for this argument, and contends the attorneys-in-fact "attempt[ed] to change the beneficiary designation in almost exactly the same way the agents in *Shubert* [*sic*] did."

As an initial matter, this issue was not presented to the trial court below, and on that basis alone, we may refuse to consider it on appeal. (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1381 [failure to raise issue in trial court generally results in waiver on appeal].)

Moreover, Daniel has not demonstrated he would have prevailed on this issue had he properly raised it below. In *Schubert*, a daughter, acting for her father pursuant to a durable power of attorney, created an inter vivos trust the day before he died that granted the daughter a life estate in his property, with the remainder of her father's estate to be distributed to his grandchildren after the daughter's death, effectively bypassing the father's three other children. (*Schubert, supra,* 95 Cal.App.4th at p. 102.) The father had earlier executed a will that provided for the equal distribution of his property among his four children. (*Id.* at pp. 102–103.) Although the daughter had the authority to create a trust under the power of attorney and section 4624, subdivision (a), the durable power of attorney did not grant her the authority to change a beneficiary designation. (*Schubert*, at pp. 103–104.) Because the trust she created attempted to change the beneficiaries from those named in her father's will and the laws of intestate succession, it violated section 4264, subdivision (f), and was invalid. (*Schubert*, at pp. 106–107.)

Daniel contends Marilyn's attorneys-in-fact here, as in *Schubert*, violated section 4264, subdivision (f) when they executed the trust instrument by "providing a life estate in the [Moncada property] to Patricia with the remainder to [Marilyn's] children." (Fn. omitted.) But his brief on appeal fails to explain what specific language in the trust instrument provided Patricia with a life estate or altered the beneficiaries. Moreover, it is not clear from our own review of the terms of the Trust that it did anything to alter the beneficiaries of Marilyn's estate, or provided any interest to Patricia that was not also provided to all other siblings. As appellants argue, the Trust appears to grant the Moncada property to all siblings in equal shares, and provides all nine of them a right to live in the property for five years following Marilyn's death if Marilyn is survived by Patricia.[8]

We find *Schubert* inapposite, because there the successor trustee clearly engaged in self-dealing and omitted her siblings, in violation of both the laws of intestate succession and the provisions of their father's will. (*Schubert, supra*, 95 Cal.App.4th at pp. 105–106.) As the *Schubert* court explained in harmonizing the provisions of section 4264, subdivisions (a) and (f), "An attorney-in-fact may create a trust when so authorized by the terms of the power of attorney, but the power to designate particular trust beneficiaries is limited. . . . Arguably, in a given case [beneficiaries other than the principal] could be named consistent with the principal's existing estate plan or the laws of intestate succession, provided that doing so did not effectuate a *change* in 'the designation of beneficiaries to receive any property . . . on the principal's death' (Prob. Code, § 4264, subd. (f)) or violate other

---

[8] Kelli told the trial court that the provision allowing all siblings to reside in the Moncada property has been waived, because the siblings have all agreed to sell the property. The trial court made no specific finding on this issue.

12

proscriptions of law. [Citations.] Under those circumstances, the attorney-in-fact would not be the one selecting the beneficiaries. In effect, they would be designated by either the principal, pursuant to the principal's original estate plan, or the Legislature, according to the laws of intestate succession. Construed in this manner, Probate Code section 4264 would permit an attorney-in-fact to create a trust for the benefit of the principal, or possibly for the benefit of those beneficiaries already designated in the principal's existing estate plan or determined according to the laws of intestate succession, in order to avoid probate." (*Schubert*, at pp. 105–106.) Here, unlike in *Schubert*, there is no evidence that Marilyn's attorneys-in-fact *changed* the beneficiaries from those designated by the laws of intestate succession, nor is there any issue of overriding her testamentary intent because she died intestate.

Determining the validity of the Trust under the provisions of section 4264, subdivisions (a) and (f) may be further complicated in this case by the Trust's reference to the distribution of the Moncada property by a "Mallen Children Trust," which no party explains and which does not appear in the record. Because the issue was not presented in the trial court below and concerns factual issues that the record and briefing is inadequate to permit us to resolve, we decline to address it. (See *Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780 ["The general rule that a legal theory may not be raised for the first time on appeal is to be stringently applied when the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial."]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 ["Only when the issue presented [on appeal] involves purely a legal question, on an *uncontroverted record and requires no factual determinations*, is it appropriate to address new theories."].)

13

Daniel also contends the trial court implicitly found that Marilyn was incompetent to execute the durable power of attorney in 2009, because "the Court made no finding that she was competent" when she executed the durable power of attorney and "made no finding [appellants] had any legal authority" to execute the Trust. Daniel argues because the record is silent on any finding that Marilyn was competent when she executed the durable power of attorney, and an implied finding that she was *incompetent* would support the trial court's express finding that appellants "have not shown that a trust was created over the real property," we should presume the trial court considered the evidence and determined Marilyn was incompetent to execute the durable power of attorney.

Although we imply factual findings that support the judgment, we do so only when they are supported by substantial evidence in the record. (*LSREF2 Clover Property 4, LLC v. Festival Retail Fund 1, LP* (2016) 3 Cal.App.5th 1067, 1076.) In support of his argument that Marilyn was incompetent to execute the durable power of attorney, Daniel cites the Trust instrument itself and conclusory statements in his objections. Daniel does not explain how the trust instrument itself demonstrates Marilyn was incompetent to execute a durable power of attorney, and his bare conclusion that he "is informed and believes, and upon his own observations has concluded, that at the time [Marilyn] executed the Power of Attorney, she had Alzheimer's-type dementia," and her "capacity to execute the Power of Attorney was thus dubious at best," is insufficient to overcome the rebuttable presumption of competence to make decisions. (§ 810; see *Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1040 [" 'A person challenging the validity of a trust instrument on the grounds that the trustor lacked capacity to execute

14

the document or did so under the undue influence of another carries the heavy burden of proving such allegations.' "].)

Although Daniel's objections also reference an e-mail sent by Mary to the other siblings in 2009, our review of the ambiguous text of that e-mail reveals no substantial evidence of incompetence to execute a durable power of attorney. In the e-mail, Mary explains that Kelli had advised the siblings they should "get mom to sign a POA for the IRS," and that when Mary went to Marilyn's house, she opened an "unusual" letter from Marilyn's bank regarding a "frozen" account. Mary states that she had an "extremely emotional" conversation with Marilyn, and writes, "For the last several years Kelli, myself and probably many of you have advised mom that she needed to take care of her affairs. I think we all have met with the shared experience of mom refusing any assistance." The e-mail also states that while Marilyn "misplaced" the letters Mary handed her, they found them, at which point Marilyn read the letters, was "calm" and asked Mary to contact Marilyn's attorney for advice, which Mary did. The e-mail notes that Marilyn's attorney reviewed three powers of attorney prepared by Kelli and advised Marilyn to sign them. Toward the end of the e-mail, Mary also states that "mom does not remember those grandkids who have not been around." There is no statement by Mary in the e-mail that suggests Marilyn was incompetent to authorize agents to handle her affairs. Accordingly, we conclude the record is inadequate to support an implied finding by the trial court that Marilyn was incompetent to execute a durable power of attorney in 2009.

## B. *Request for Neutral Administrator*

Appellants also argue the trial court erred in failing to appoint a neutral fiduciary as either an administrator of the estate or trustee of the Trust. Although appellants cite a number of authorities supporting the

15

proposition that the trial court *may* appoint a neutral administrator, they do not discuss or cite authority showing the trial court *abused its discretion* under the circumstances of this case by appointing Daniel administrator of Marilyn's probate estate. Appellants argue Daniel was "in actual conflict" with his siblings, but they do not cite any evidence of a disqualifying conflict of interest beyond conclusory statements that a conflict existed. (See, e.g., *Estate of Cummings* (1972) 23 Cal.App.3d 617, 625 ["In order to disqualify a person from acting as a representative of an estate due to a conflict of interest, his claim to property of the estate must be without sufficient reason or his conduct must evince a lack of integrity."]; *Estate of Daigh* (1963) 59 Cal.2d 367, 368–369 [fact that person seeking to be administrator has an interest adverse to decedent's estate does not necessarily disqualify him or her from appointment].) Nor did appellants identify a neutral fiduciary, even after the trial court told the parties it did not have a " 'list' " of private fiduciaries.[9] On this record, we conclude appellants have failed to demonstrate that the trial court abused its discretion in appointing Daniel administrator of the probate estate.

To the extent appellants argue the trial court should have appointed a neutral trustee to administer *the Trust*, the trial court made no finding in that regard, presumably because it concluded appellants had failed to establish that a trust was created over the Moncada property. Because the

---

[9] Nor did appellants request that the trial court appoint the public administrator. Their "Memorandum of Points and Authorities in Support of Court's Power to Appoint a Neutral Fiduciary" stated: "The court also has the power to appoint the public administrator under [§ 7660 et seq.]. However, objectors prefer that either a private professional fiduciary be appointed, or in the alternative, an attorney who can act in pro per, as both administrator and his own counsel."

trial court is better placed to resolve this factual issue, we leave it to the trial court to address if raised by the parties on remand.

### III.  DISPOSITION

We reverse the order of the trial court denying the petition for order determining title to real property insofar as it determined the Moncada property was not an asset of the Trust.  In all other respects, the probate court orders are affirmed.  The parties are to bear their own costs on appeal.

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

SANCHEZ, J.

A156652
*Estate of Mallen*