Filed 4/10/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DAVID DUDEK, as Trustee, etc.,<br><br>    Appellant,<br><br>    v.<br><br>ANNE KEBISEK DUDEK, Individually and as Trustee, etc., et al.,<br><br>    Respondents. | D073491<br><br><br>(Super. Ct. No. 37-2017-00023775-PR-TR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County,

Robert C. Longstreth, Judge.  Reversed.

The Stone Law Group, Kenneth H. Stone and Phillip J. Szachowicz for Appellant.

Green Bryant & French and Joel R. Bryant for Respondents.

I.

INTRODUCTION

Petitioner David Dudek (David)[1] appeals from a judgment entered after the trial court sustained the demurrer of respondents Anne Kebisek Dudek,[2] Tiffany Guzman, Jeanette M. Kebisek, Mary J. Kebisek, Guillermo Andrade, Maria Sanchez, Ora H. Day, Tonya Courtney, and Michael Quinn (the respondents) to David's petition (the Petition), filed pursuant to the Probate Code, to recover money distributed to the respondents in accordance with the beneficiary designation of Genworth Life Insurance Policy #5804946 (the Policy), which covered the life of J.D. Dudek (J.D.), the Petitioner's brother.

According to David, in late 2009, J.D. created and executed the J.D. Dudek Life Insurance Trust (the Trust), an irrevocable life insurance trust that named David as the trustee. David asserts that the Policy is listed as an asset of the Trust, to be held and administered in accordance with the Trust's terms. According to the Petition, the Trust designates David and his sister, Sharon Van de Grift, as the residual beneficiaries of the Trust who, pursuant to the terms of the Trust, would be entitled to the proceeds of the Policy.

---

[1]     Because the Petitioner and other individuals to be referenced in this opinion share the same last name, we will refer to the Petitioner and others, when necessary, by their first names for the purpose of clarity.

[2]     Defendant Anne Kebisek Dudek was sued in her individual capacity, as well as in her capacity as trustee of the Dudek Family Trust.

According to the allegations of the Petition, J.D. prepared and submitted to the life insurance company the forms required by that company to change the ownership and beneficiary designations on the Policy in order to establish David, as trustee, as the sole owner and named beneficiary of the Policy.[3] David was unaware that not long after J.D. submitted the forms, the insurance company rejected the ownership and beneficiary designation forms because J.D. had altered some of his entries without initialing the changes. David was also unaware that J.D. had failed to file corrected forms with the life insurance company after he was notified of the insurance company's rejection of his submitted forms. Further, David did not know that approximately six years later, in 2016, J.D. submitted a new form to the life insurance company in which he purported to alter the beneficiary designation on the Policy to name the respondents as the beneficiaries of the Policy, instead of naming David, as trustee of the Trust, as the beneficiary. The form that J.D. submitted in 2016 naming the respondents as beneficiaries of the Policy was accepted by the life insurance company.

After J.D. died, David produced the Trust to the life insurance company and sought to obtain the proceeds of the policy. However, the life insurance company distributed the proceeds of the policy to the beneficiaries that it had on file, pursuant to the beneficiary designations that J.D. submitted in 2016.

David subsequently filed the Petition in this case, seeking an order directing the respondents to transfer the proceeds of the Policy to him as the trustee of the Trust. In

---

[3]     According to the allegations of the Petition, the original beneficiaries of the Policy were David and one of the respondents, Ora H. Day.

ruling on the respondents' demurrer, the trial court concluded that the Trust had not been funded, and therefore, had not become a valid trust, as a result of J.D.'s failure to file documents with the life insurance company to change the ownership and beneficiary designations to correspond with the terms of the Trust document. In other words, the trial court concluded that no trust was ever created because J.D. never effectively placed the Policy into the Trust.

On appeal, David contends that the trial court erred in concluding that the allegations of the Petition cannot support a finding that a valid irrevocable trust was created when J.D. executed the Trust document in 2009 and transferred ownership of the Policy to David as trustee through that document. David further contends that the allegations of the Petition support an order requiring the respondents to convey the life insurance proceeds to him, as trustee of the Trust.

We agree with David that the trial court erred in sustaining the respondents' demurrer to the Petition; the Petition alleges facts that could support a finding that the execution of the Trust document created an irrevocable trust and constituted an effective inter vivos donative transfer of the Policy to David as trustee of the Trust. Given the irrevocable nature of the Trust and the language in the Trust document demonstrating J.D.'s intention to immediately transfer ownership of the Policy to David, upon execution of the Trust document, the Policy irrevocably became Trust property. As a result, J.D. would have had no ability to effectuate any further transfer of the trust property to other parties. Thus, David, as trustee, may petition the court for, and be entitled to, an order

4

requiring the respondents to transfer the proceeds of the Policy to him in his capacity as trustee of the irrevocable Trust. We therefore reverse the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

On July 5, 2001, J.D. initiated coverage under a life insurance policy for a $1,000,000 death benefit. At that time, J.D. designated David and Ora H. Day, in their individual capacities, as beneficiaries of the life insurance policy.[5]

In 2003, J.D. was diagnosed with acute lymphoblastic leukemia. According to the petition, "[i]n an effort to aid in Decedent's treatment, Petitioner agreed to act as a donor in two separate bone marrow transplants[,] which prolonged Decedent's life."

On December 31, 2009, J.D. executed the J.D. Dudek Life Insurance Trust, naming David as trustee and beneficiary.[6] The operative terms of the Trust included the following relevant provisions:

> "A. . . . It is the Grantor's intent in creating this trust that all gifts made to this trust be both complete and gifts of present interests for federal gift tax purposes, and that the assets of this trust, including any life insurance proceeds, be excluded from his gross estate for federal estate tax purposes. All provisions of this trust shall be construed in such a manner as best to affect [*sic*] these intents.

---

[4]    Because this appeal arises from a judgment entered after the sustaining of a demurrer, we take the relevant factual background from the allegations of the petition.

[5]    J.D. specified that 85 percent of the proceeds of the policy was to go to David and 15 percent was to go to Day.

[6]    The Petition alleges that J.D. executed the Trust "in appreciation of the emotional support and medical support provided by [David]."

"B.  The Grantor transfers to the Trustee the property listed in Schedule A, to be held and administered according to the terms of this trust. . . .  The Grantor retains no right, title, or interest in any trust property.

"[¶] . . . [¶]

"This trust and all interests in it are irrevocable, and the Grantor has no power to alter, amend, revoke, or terminate any trust provision or interest."

Schedule A of the Trust lists two assets to be held in the Trust:  (1) one hundred dollars, and (2) the Policy.

David signed the Trust, with a notary verifying his signature, on January 20, 2010.

Approximately one month after executing the Trust documents, on January 29, 2010, J.D. "executed a 'Certification of trustee powers' and 'Ownership, beneficiary and payee designation request,' " which he submitted to the insurance company, requesting that the owner and beneficiary of the Policy be changed to David, as trustee of the Trust. These forms were signed not only by J.D., but also by David as the trustee and new owner of the Policy.

In completing the forms, J.D. handwrote the information requested on the forms. In doing so, he made two errors, which he sought to correct by interlineating his original responses and then writing his corrected responses next to the interlineations.[7]  A copy of

---

[7]     The forms demonstrate that the items for which J.D. had crossed out his original responses and wrote in new responses without initialing the corrections involved one correction in the location where he was asked to write the "Social Security/Tax ID Number" for the new owner (i.e., the Trust), as well as one correction in the location where he was asked to write the Policy number.

6

the forms attached to the Petition demonstrates that J.D. did not initial next to either of his corrected responses.

According to the Petition, J.D.'s insurance agent faxed to Genworth Life Insurance Company (Genworth) the forms that J.D. had completed. However, on February 16, 2010, "Genworth rejected Decedent's change of ownership form, stating that the form was altered and that changes must be initialed by the policyholder."[8]

The Petition alleges that J.D. failed to resubmit to Genworth the change of ownership forms with the changes initialed.

Six years later, J.D. executed new beneficiary change forms and submitted them to Genworth. The Petition attaches a letter dated November 11, 2016, in which Genworth notified J.D. that it had "received [his] request to change the beneficiary on this

---

[8] A letter written by a member of Genworth's claims department to David after David attempted to make a claim on the Policy indicated that Genworth had indeed rejected J.D.'s 2010 attempt to change the ownership and beneficiary designation of the Policy:

> "The policy file records show that an attempt to change the owner and beneficiary on the policy to the J D Dudek Life Insurance Trust dated 12/31/2009 was received in our office via fax on 02/01/2010. The request was not in good order due to alterations to the form that were not initialed by the policy owner. The policy owner was notified in writing on 02/17/2010 (copy enclosed) and given the opportunity to submit a new form. While subsequent beneficiary change requests were received for the policy, records do not show that another request to change the beneficiary to the trust was ever received."

The copy of the letter sent to J.D. in February 2010 indicated that Genworth notified him that they had been "unable to process [his] request" because they were "unable to accept altered forms. All changes must be initialed by the policyowner."

7

contract(s)," and said that its "records now show" that the respondents were the primary beneficiaries of the Policy.

J.D. died on December 7, 2016.

Between December 7, 2016 and January 12, 2017, David was informed via telephone that another beneficiary claim had been made on the Policy. David sent a letter to Genworth informing them of his contention that he was entitled to the proceeds of the Policy pursuant to the Trust. In a separate letter sent January 14, 2017, David again informed Genworth of the existence of the Trust, notified Genworth of his intent to contest the November 11, 2016 beneficiary designation based on the execution of the irrevocable trust document, and requested that Genworth not make any distributions from the Policy at that time.

On February 7, 2017, Genworth notified David that it would not withhold distribution of the proceeds of the Policy, and that it intended to distribute the proceeds to the respondents.

On April 8, 2017, David sent letters to the respondents notifying them that they had received the proceeds from the Policy to which they were not legally entitled because those proceeds were the property of the Trust. David asked the respondents to deliver to him, as trustee of the Trust, the Policy's death benefits. David did not receive payment from any of the respondents.

On June 30, 2017, David filed his Petition in the trial court, seeking the following: (1) an order directing the transfer of Trust property from respondents to David, as trustee, pursuant to Probate Code section 850; (2) an order determining the proper beneficiaries

8

of the Trust's assets pursuant to Probate Code section 17200; (3) a determination that the respondents had acted in bad faith in wrongfully taking, concealing, or disposing of property belonging to the Trust; and (4) a determination that J.D. had acted in bad faith in wrongfully taking, concealing, or disposing of the property of the Trust.

Approximately three months after David filed the Petition, the respondents demurred, arguing that David had failed to state a cause of action against them and that David's claim should have been brought against J.D., alone. The respondents argued that they "have no liability to the Trust" because they "are not signator[ies] to the Trust, are not bound by the Trust and owe no duty or obligations to the Trust." According to the respondents, the terms of the Trust obligated *J.D.* to change the beneficiary designation on the Policy to David, as trustee, and "[w]hatever obligations JD had to the Trust, if any, would be based on the terms of the Trust itself and *are between him and the Trust*." (Italics added.) They argued that because the only obligations to do anything belonged to J.D., such obligations "do not bind either Genworth or the individual Respondents, none of whom are parties to the Trust." The respondents repeated that the "alleged wrong [that] forms the basis of Petitioner's Petition is JD Dudek's failure to name the Trust as beneficiary of the Genworth Policy," and claimed that they cannot be "somehow liable for JD Dudek's conduct in that regard."

After full briefing on the issue and a hearing, the trial court sustained the respondents' demurrer on a ground raised tangentially by the respondents' demurrer. Specifically, the court concluded that it was "evident from the face of the Petition that [the] claims [of the Petition] arise from Decedent's alleged failure to complete the

9

creation of the Trust as to the policy by transferring the policy into the Trust as required by Probate Code § 15200(b)." According to the trial court, David erred in choosing not to assert a claim "against the Decedent," but "instead to assert a claim against beneficiaries who were paid by the insurance company according to the terms of the policy, rather than the terms of a purported trust as to the policy that the Decedent failed to create." The court therefore sustained the demurrer as to all of the respondents, without permitting David an opportunity to amend.

The trial court entered a judgment of dismissal with prejudice on December 14, 2017. David filed a timely notice of appeal.

## III.

## DISCUSSION

David asserts that the trial court erred in sustaining the respondents' demurrer to the Petition without leave to amend. Specifically, he contends that the trial court erred in concluding that J.D. "failed to complete the steps necessary to create the Trust as required by Probate Code § 15200(b)." According to David, when J.D. executed the Trust, he "forfeited his interest in and control of the Trust and its assets, so that [J.D.] did not have the right to change the beneficiary designation in November 2016," and that because J.D. lost the right to change the beneficiary designation, David, "as trustee of the Trust, may properly pursue a claim against Respondents for recovery of the Trust's assets that Respondents received, but [to] which they were not entitled."

10

A. *Standards of review on demurrer*

"A demurrer tests the legal sufficiency of the complaint." (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1608.)  On appeal, an appellate court "review[s] the complaint de novo to determine whether it alleges facts sufficient to state a cause of action.  For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law.  We also consider matters that may be judicially noticed.  [Citation.]  When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.'  [Citation.]  Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action."  (*Id.* at pp. 1608–1609, fn. omitted.)

Further, in considering the trial court's order sustaining a demurrer without leave to amend, " 'we review the trial court's result for error, and not its legal reasoning.' " (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 478.)  In other words, if the judgment is correct on any theory, even one not provided by the trial court, we affirm.  (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

B. *Analysis*

The trial court concluded that, based on the allegations of the Petition, David could not establish that a valid trust had been created.  According to the trial court, the claims in the petition "arise from [J.D.'s] alleged failure to complete the creation of the Trust as to the policy by transferring the policy into the Trust as required by Probate

11

Code § 15200(b)."  Essentially, the court determined that the allegations of the Petition demonstrate that the trust "was never created because the property at issue was never transferred into the Trust."  We disagree with the trial court's understanding of what was required to create a trust and to transfer the property into the trust, and its conclusion that such requirements were not met by what is alleged to have occurred, according to the factual allegations in the Petition.

Under the Probate Code, a trust may be created in one of five ways:  "(a) A declaration by the owner of property that the owner holds the property as trustee. [¶] (b) A transfer of property by the owner during the owner's lifetime to another person as trustee. [¶] (c) A transfer of property by the owner, by will or by other instrument taking effect upon the death of the owner, to another person as trustee. [¶] (d) An exercise of a power of appointment to another person as trustee. [¶] (e) An enforceable promise to create a trust."  (Prob. Code,[9] § 15200.)  As the trial court recognized, the Petition here alleged that J.D. sought to create the Trust pursuant to subdivision (b) of section 15200—through the "transfer of property by the owner during the owner's lifetime to another person as trustee."

The essential necessary elements of a valid trust are (1) a trust intent (§ 15201); (2) trust property (§ 15202); (3) trust purpose (§ 15203); and (4) a beneficiary (§ 15205). (See 13 Witkin, Summary of Cal. Law (11th Ed. 2017) Trusts, § 33, p. 644.)  The trial court focused on the requirement that in order to create a trust, there must be "trust

---

9        Further statutory references are to the Probate Code unless otherwise indicated.

property." (§ 15202.) The trial court apparently believed that because J.D. never submitted corrected change of ownership and beneficiary forms to Genworth, the Policy was never transferred to David, as trustee, and it was therefore never placed into the Trust. Essentially, the trial court concluded that the facts as alleged amounted to an *ineffective* inter vivos transfer of the Policy. We disagree.

According to the Restatement, "[e]xcept for trusts that are created by declaration [citation] or by contract [citation], a transfer of the intended trust property is required for the creation of an express trust, whether during life or at death." (Rest.3d Trusts, § 16, com. a.)[10] The effectiveness of a transfer for the purposes of establishing an inter vivos trust, however, is determined by the rules that govern the making of gifts. (See Rest.3d Trusts, § 16 ["The effectiveness of a transfer for these purposes, that is, to establish an inter vivos or testamentary trust, respectively, is determined either by rules that govern the making of gifts or by those governing devises"].) Thus, we look to the rules of property law—and in particular to the law of donative transfers or gifts—to determine whether an effective transfer of personal property has been made.

"A gift is a transfer of personal property, made voluntarily, and without consideration." (Civ. Code, § 1146; 13 Witkin, Summary of Cal. Law (11th ed. 2017) Personal Property, § 134, p. 142; *Bounds v. Superior Court* (2014) 229 Cal.App.4th 468,

---

10    " 'California trust law is essentially derived from the Restatement Second of Trusts. Over a number of years, the Restatement Second of Trusts has been superseded by the Restatement Third of Trusts. [Citation.] As a result, we may look to the Restatement Third of Trusts for guidance.' " (*Carne v. Worthington* (2016) 246 Cal.App.4th 548, 557 (*Carne*), citing *Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 379.)

13

481–482 ["A donative transfer is a gratuitous transaction. It can be inter vivos or testamentary"], citing 13 Witkin, Summary of Cal. Law (10th ed. 2005) Personal Property, §§ 124–137, pp. 139–150.) "Three things are necessary for a valid gift: (a) There must be an intent, on the part of a donor having capacity to contract, to make an unconditional gift. [Citation.] (b) There must be an actual or symbolical delivery, such as to relinquish all control by the donor. [Citation.] (c) The donee must signify acceptance, except where it may be presumed. [Citation.]" (13 Witkin, Summary of Cal. Law (11th ed. 2017) Personal Property, § 134, p.142.)

With respect to personal property, it is clear that a donative transfer that is intended to be completed during the donor's lifetime may be completed in one of two ways: either by the actual delivery of the personal property at issue to the intended donee *or* through the use of a document of donative transfer. (Rest.3d Property, Wills and Other Donative Transfers, § 6.2, com. ["The transfer of personal property, necessary to perfect a gift, may be made [¶] (1) by delivering the property to the donee or [¶] (2) by inter vivos donative document"].)

The Petition clearly alleges that J.D. attempted to make a donative transfer of the Policy into the Trust, such that the Policy would be owned by David as Trustee, through the use of a document of donative transfer. "An inter vivos donative document may transfer any type of personal property, whether tangible or intangible, *including contract rights such as those embodied in a life-insurance policy . . . .*" (Rest.3d Property, Wills and Other Donative Transfers, § 6.2., com. t.) Witkin and the Restatement Third of Property, section 6.2 concur with respect to what is meant by a document of transfer

14

sufficient to make an inter vivos gift of personal property: "An inter vivos donative document is a writing signed by the donor that (a) identifies the donor and donee, (b) describes the subject matter of the gift, and (c) specifies the nature of the interest given. [Citation.] The terms of an inter vivos donative document must be in writing and the document must be signed by the donor. [Citation.] The document may transfer any type of tangible or intangible personal property, including contract rights, shares of stock, a bond, or a promissory note. [Citation.]" (13 Witkin, Summary of Cal. Law (11th ed. 2017) Personal Property § 142, p. 147, citing Rest.3d Property, Wills and Other Donative Transfers, § 6.2, coms. q, r, s, & t.)[11]

The Trust document attached to the Petition appears to meet all of the necessary elements of a donative transfer document. Specifically, the Trust document evidences that J.D. had the intent to effectuate an immediate, complete and irrevocable transfer of ownership of the Policy to David, as trustee. For example, the Trust states: "The Grantor *transfers* to the Trustee the property listed in Schedule A, to be held and administered according to the terms of this trust. . . . The Grantor retains no right, title, or interest in any trust property." (Italics added.) The only property listed in Schedule A is $100 and the Policy; the document thus establishes that J.D. intended to transfer $100 and the Policy to David, as trustee, to be effective immediately upon execution of the document. The Trust also includes the following language: "It is the Grantor's intent in creating this

_____

11     Again, the Restatement Third of Property specifies that a transferring document may be used to transfer contract rights such as those at issue here—i.e., "*contract rights such as those embodied in a life-insurance policy.*" (Rest.3d Property, Wills and Other Donative Transfers, § 6.2., com. t, italics added.)

15

trust that *all gifts made to this trust be both complete and gifts of present interests* for federal gift tax purposes, and that the assets of this trust, including any life insurance proceeds, be excluded from his gross estate for federal estate tax purposes" (italics added), thereby indicating J.D.'s intention to transfer all of his rights to ownership of the Policy immediately and irrevocably to David. The Trust document was signed by J.D. Thus, in addition to creating the Trust, the Trust document also constituted a donative transfer document.

The Petition alleges that J.D. delivered the donative transfer document to David. "The delivery of the document by the donor to the donee is an act manifesting that the donor intends the document to be presently operative, unless there is evidence that the delivery was made for some other purpose." (Rest.3d Property, Wills and Other Donative Transfers, § 6.2, com. u.) Further, the act of delivering the document is sufficient to meet the requirement of delivery of the subject matter of a donative transfer, given that delivery of a document of transfer constitutes *symbolic delivery* of the gift itself: "The traditional understanding of symbolic delivery is that it is one in which the donor gives the donee an object or item that symbolizes the subject of the gift. The classic example of a symbolic delivery is delivery of an inter vivos donative document to the donee." (Rest.3d Property, Wills and Other Donative Transfers, § 6.2, com. g; and see *Lefrooth v. Prentice* (1927) 202 Cal. 215, 224 ["There is likewise no question but that delivery may be symbolical such as delivery of a written instrument without physical delivery of the securities themselves so long as the instrument is one upon which delivery might be compelled"].)

16

Further, David signed the Trust, which included the necessary transferring language, thereby signifying his acceptance of the gift. (See 13 Witkin, Summary of Cal. Law (11th Ed. 2017) Personal Property, § 134, p.142 [elements of an effective gift are (1) intent to make a gift, (2) delivery of subject matter or document of transfer, (3) acceptance by donee unless acceptance may be inferred].)

The allegations of the Petition thus set forth all of the elements necessary to constitute an effective donative transfer of the Policy as between J.D. and David. As a result, upon the execution, delivery, and acceptance of the Trust document, a valid and enforceable gift of the Policy was made to David, as trustee of the Trust. Once this gift was made, J.D. no longer owned the Policy; instead, it was owned in trust by David.

If the allegations of the Petition are true, as must be assumed on demurrer, then J.D. no longer owned the Policy as of 2010. Consequently, his attempts to effectuate changes to the named beneficiaries of the Policy after that time were futile. In addition, it is of no legal consequence, at least with respect to the creation of the Trust and the issue of the donative transfer of the Policy to David in trust, that J.D. failed to subsequently modify the change of owner and beneficiary forms that he submitted to Genworth after his attempt to change the owner and beneficiary to David, as trustee, was initially rejected by Genworth. Essentially, whether J.D. followed through with his duty to inform Genworth of the change in ownership is of no legal significance, at least as far as the transfer ownership of Policy *as between J.D. and David* is concerned. Indeed, the commentary to the Restatement Third of Property discusses this precise issue. In a situation involving the transfer of ownership of intangible personal property of which

17

evidence of a claim of right is used to identify ownership (i.e., intangible property such as a life insurance policy or stock), the Restatement Third of Property explains that a donor's failure to transfer his or her claim to the intangible property in the manner provided by the requirements set forth by the instrument that provides evidence of the claim (for example, by the manner provided for on a stock certificate or with respect to a life insurance policy) does not prevent a transfer from being accomplished *as between the donor and the donee* if the necessary elements of a donative transfer are otherwise met:

> "A donor may make a gift of intangible personal property by delivering the instrument evidencing the claim that constitutes the intangible personal property. Such instruments include bonds, shares of stock, insurance policies, and bank passbooks. [¶] If the instrument provides that a transfer of the claim can be made only in a specified manner, the preferred method of making a gift of such property is to follow the specified procedure. *If the specified procedure is not followed, however, delivery of the instrument with donative intent constitutes a gift as between the donor and the donee*. The attempted restriction on transfer is for the protection of the one against whom the claim can be asserted." (Rest.3d Property, Wills and Other Donative Transfers, § 6.2, com. h, italics added.)[12]

_____

[12]    The Restatement Second of Property states the same rule in a slightly different, and arguably more clear, manner:

> "If intangible personal property is involved, the delivery will necessarily relate to the evidence of the claim that is the intangible personal property. The evidence of the claim may be in the form of shares of stock, an insurance policy, a bank passbook, or any other evidence of the claim. The evidence of the claim may provide that a transfer of the claim shall be made only in some specified manner. Such attempted restriction on the transfer of the claim is for the protection of the one against whom the claim can be asserted. *A delivery of the evidence of the claim by the owner thereof to another person with the intention that such other person succeed by gift to the ownership of the claim accomplishes a transfer of the ownership as between the donor and the donee*." (Rest.2d Property, Donative Transfers, § 31.1, com. b, italics added.)

18

Thus, although J.D.'s failure to complete the forms according to Genworth's requirements protected *Genworth* from claims made against it by individuals other than those who were identified on the forms that it had on file, the failure to properly complete the forms could not invalidate or revoke the irrevocable gift that J.D. had previously effectuated to David, as trustee of the Trust. Once J.D. made a donative transfer of the policy to David, J.D. no longer owned the Policy, even if Genworth was unaware of this. Thus, although J.D.'s later decision to name the respondents as beneficiaries through the change of beneficiary forms provided by Genworth may have protected Genworth from claims for damages made by individuals or entities not identified on the forms on the ground that it had wrongfully distributed the proceeds, David's naming the respondents as beneficiaries on the Genworth documents did nothing to alter David's legal right to possess the Policy, and, ultimately, its proceeds, as trustee of the Trust.

The recent opinion in *Carne*, *supra*, 246 Cal.App.4th at pp. 563–564 is illustrative on this point, although *Carne* involved the transfer of real property into a trust, whereas this case involves the transfer of intangible personal property into a trust. In *Carne*, the decedent was the settlor and trustee of an original trust, which was revocable during his lifetime. (*Id.* at p. 552.) However, the decedent later executed a second trust that named someone other than the decedent as trustee. (*Id.* at p. 560.) The decedent stated in the second trust that he was transferring the property listed on an attached schedule to the trustee of that trust, and the property listed on the attached schedule included the parcel of real property that was at issue in the case. (*Id.* at pp. 551–552.)

19

In considering the claim of a successor trustee to the second trust who was attempting to confirm that the real property described in a schedule attached to the trust had in fact been transferred into the second trust, the trial court concluded that the decedent's conduct had failed to effectuate any actual transfer of the property into the second trust because the decedent had failed to execute a separate deed transferring the property from the first trust to the second trust at the time he executed the second trust. (*Carne*, *supra*, 246 Cal.App.4th at pp. 554–555.)  The appellate court in *Carne* reversed, concluding that the second trust was itself a document of transfer sufficient to effectuate a valid transfer of property from the decedent to the trustee of the second trust.  (*Id.* at pp. 558–559, 563–564.)  The appellate court reasoned that because the first trust was a revocable living trust, the decedent owned the property as the sole trustee of the first trust at the time he executed the second trust.  As a result, at the time the decedent executed the second trust, he had the power to transfer the property, and his signature on the second trust, which included the necessary transferring language to establish his intent to immediately transfer title to the trustee of the second trust, was sufficient to convey good title from the earlier trust to the later trust, despite the absence of a separate deed of

20

transfer or other formalities typically associated with the conveyance of real property. (*Id.* at p. 564.) The appellate court in *Carne* thus concluded that a trust document that included transferring language demonstrating an intent to convey property to another individual, as trustee, was sufficient, as between the decedent and the trustee identified in the second trust, *to effectuate a transfer of real property*, despite the fact that the decedent had failed to execute a separate deed transferring ownership of the land.

If a trust document can be sufficient to effectuate the valid transfer of *real property* from a settlor to a trustee, despite the failure of the decedent to complete the usual formalities required to transfer title to land, it seems clear that a trust document can similarly effectuate the valid transfer of *intangible personal property* in the form of a life insurance policy from a settlor to a trustee, even absent the settlor's completion of the otherwise usual formalities associated with transferring ownership of a life insurance policy vis-à-vis a life insurance company's records.[13]

Because the allegations of the Petition can support a finding that a valid, *irrevocable* trust was created and that J.D. completed a donative transfer of his personal property (i.e., the Policy) by the "transferring" language in the Trust document and his

---

[13]    We recognize that this result may seem surprising to some who are unfamiliar with trust law and the law of donative transfers of personal property.  However, it must be stressed that there are substantial and significant consequences that flow from the creation of an *irrevocable* trust, such as the one that J.D. created here.  Once such a trust is created and a valid transfer of property is made to the trust, the settlor *no longer has any right to possess or otherwise dispose of the property placed in an irrevocable trust*, such that that individual has no ability to reverse course or change his or her mind later.

21

delivery of that document to David, the next question that we must address is whether David may bring an action against the respondents to recover Trust property. Although the trial court appeared to believe that David was limited to a claim against J.D. (or his estate, given that he is now deceased), for J.D.'s failure to complete the necessary paperwork with respect to Genworth, once it is clear that the allegations of the Petition can support a finding that a valid transfer of the property was made on December 31, 2009, it also becomes clear that David may bring an action to recover Trust property against third parties who wrongfully possess that property.

There is no doubt that a trustee may file a petition seeking the transfer of trust property. (§ 850.) Section 850 provides in relevant part: "(a) The following persons may file a petition requesting that the court make an order under this part: [¶] . . . [¶] (3) The trustee or any interested person in any of the following cases: [¶] (A) Where the trustee is in possession of, or holds title to, real or personal property, and the property, or some interest, is claimed to belong to another. [¶] (B) *Where the trustee has a claim to real or personal property, title to or possession of which is held by another*. [¶] (C) Where the property of the trust is claimed to be subject to a creditor of the settlor of the trust." (Italics added.) Section 850 specifically contemplates that a trustee may bring an action to recover trust property that is held by anyone other than the trustee; it does not limit recovery to a certain class of people, nor does it purport to prevent a trustee from recovering trust assets from third parties who wrongfully possess them. Rather, "[t]he statutory scheme's purpose is to effect a conveyance or transfer of property belonging to a

22

decedent or a trust or another person under specified circumstances, to grant any appropriate relief to carry out the decedent's [or settlor's] intent, and to prevent looting of . . . estates. [Citations.] It provides the probate court with a mechanism to determine rights in property belonging to a decedent or to someone else. [Citation.]" (*Estate of Kraus* (2010) 184 Cal.App.4th 103, 117–118.)

David, as trustee, is claiming entitlement to personal property that was distributed to respondents by Genworth pursuant to the later beneficiary designation that J.D. submitted. Because David, in his capacity as trustee, is making a claim to the proceeds of the Policy on the ground that they belong to the Trust, he may bring this action to request that the court order those to whom the proceeds of the Policy were distributed convey or transfer those proceeds to him. (See § 856 ["Except as provided in Sections 853 and 854, if the court is satisfied that a conveyance, transfer, or other order should be made, the court shall make an order authorizing and directing the personal representative or other fiduciary, or the person having title to or possession of the property, to execute a conveyance or transfer to the person entitled thereto, or granting other appropriate relief"].)

In addition, David's Petition relies on section 17200, which also clearly authorizes his action. Subdivision (a) of section 17200 provides that "[e]xcept as provided in Section 15800, a trustee or beneficiary of a trust may petition the court under this chapter

concerning the internal affairs of the trust *or to determine the existence of the trust*."[14] (Italics added.)  David is clearly seeking a determination that the Trust exists; as we have already stated, assuming that the allegations of the Petition are true, he would be entitled to a determination that the Trust does indeed exist.  Further, his Petition seeks the assistance of the court "concerning the internal affairs of the trust," given that section 17200, subdivision (b) specifically provides that "[p]roceedings concerning the internal affairs of a trust include, but are not limited to, proceedings for any of the following purposes: [¶] . . . [¶] (16) *Authorizing or directing transfer of a trust or trust property to or from another jurisdiction*."  It is possible that at least some of the proceeds belonging to the trust were directed to respondents who live outside of the court's jurisdiction, and that therefore, the court would have to direct a transfer of that trust property from another jurisdiction.[15]

Finally, David seeks a penalty to be imposed against the respondents pursuant to section 859.  Section 859 provides:  "If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to a conservatee, a minor, an elder, a dependent adult, a trust, or the estate of a decedent, or has taken, concealed, or disposed of the property by the use of undue influence in bad faith or through the

---

[14]    Section 15800 generally provides that for *revocable* trusts, unless the instrument provides otherwise, during the time that the trust is revocable, the person holding the power to revoke, and not the beneficiaries, "has the rights afforded beneficiaries under this division," and the duties of the trustee are owed to the person holding the power to revoke, not the beneficiaries.

[15]    Specifically, the Petition lists the names and addresses of the respondents, some of whom are alleged to live outside of California.

24

commission of elder or dependent adult financial abuse, as defined in Section 15610.30 of the Welfare and Institutions Code, the person shall be liable for twice the value of the property recovered by an action under this part."  When it is established that property is recoverable under section 850 and that the party who took the property acted in bad faith, a section 859 penalty may be imposed.  (*Estate of Young* (2008) 160 Cal.App.4th 62, 89.) Thus, in the event that David were to prevail on his claim to recover the proceeds of the Policy on behalf of the Trust, we see nothing that would prevent David from requesting a court determination as to whether the respondents took those proceeds wrongfully and in bad faith.

It is therefore clear that David may name the respondents in his Petition, and that the respondents are proper parties to this action brought pursuant to the Probate Code.  If David can establish the facts alleged in the Petition, then it would be clear that J.D. created an irrevocable trust, and properly funded it, when he delivered to David the transferring document (i.e., the Trust document itself, which included the transferring language).  If the Trust was created, then David's entitlement to the proceeds of the life insurance policy that was an asset of the Trust would be established, and he would be able to seek the court's assistance in having those proceeds conveyed to him in his capacity as trustee.  The trial court therefore should not have sustained the respondents' demurrer to David's Petition.

IV.

DISPOSITION

The judgment is reversed.  David is entitled to costs on appeal.

AARON, J.

WE CONCUR:

NARES, Acting P. J.

GUERRERO, J.

26